# ANDERSON KILL P.C.

Attorneys and Counselors at Law

1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.andersonkill.com

Jeremy E. Deutsch
Jdeutsch@andersonkill.com
212-278-1172

*Via ECF and Facsimile (212-805-7949)*                                February 19, 2019

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 11D
New York, NY 10007

Re:  *In the Matter of the Arbitration between Jolen, Inc.,
Petitioner and Kundan Rice Mills, Ltd. and Kundan Care
Products, Ltd.*, Case No. 1:19-cv-01296-PKC

[Handwritten annotation: Submit a proposed order for service on both the Kundan Respondents and serving the firm Lennon & Prutha Garg. SO ORDERED. 2-21-19]

Dear Judge Castel:

We represent Petitioner Jolen, Inc. ("Jolen") in the above-referenced action and write pursuant to Rule 3(A) of Your Honor's Individual Practices to request a pre-motion conference to discuss an anticipated motion by Jolen for an order, pursuant to Fed. R. Civ. P. 4(f)(3), directing alternate service of the Summons and the Petition to Confirm the July 13, 2018 Partial Final Arbitration Award ("Petition") (Docket Entry No. 1, Filed February 11, 2019) against Respondents Kundan Rice Mills, Ltd. and Kundan Care Products, Ltd. (collectively, the "Kundan Respondents"). The Initial Pretrial Conference in this matter is scheduled for April 11, 2019 at 11:30 a.m.

The action requests the confirmation of a partial final award issued in favor of Jolen in a pending arbitration being conducted in New York between Jolen, a U.S. corporation incorporated in the State of Connecticut, and the Kundan Respondents, Indian business entities. The partial final award determined that the Kundan Respondents had materially breached the licensing agreement in place between the parties and that the licensing agreement was terminated and as such Kundan Respondents were required to cease manufacturing, selling, or advertising Jolen trademarked products in India and elsewhere.

Jolen is now required to serve the Kundan Respondents with the initiating documents in this confirmation proceeding. As the Kundan Respondents are located in India, such service must take place pursuant to the terms acceded to by the Indian government under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, November 15, 1965, 20 U.S.T 361 (the "Hague Convention"), or pursuant to other appropriate methods of service as ordered by this Court. As demonstrated herein, and as Jolen is prepared to support with an affidavit from a witness with knowledge of Hague Convention service in India, service under the Hague Convention in India will take a minimum of twelve months. As detailed below, the Kundan Respondents are currently in willful violation

New York, NY ■ Los Angeles, CA ■ Stamford, CT ■ Washington, DC ■ Newark, NJ ■ Philadelphia, PA

**Anderson Kill P.C.**

The Honorable P. Kevin Castel
February 19, 2019
Page 2

of the arbitrator's order to cease dealing in Jolen goods, and are attempting to circumvent the partial award in India, as such time is of the essence to Jolen to begin this action in New York, the seat of the arbitration, and a twelve month delay will seriously prejudice Jolen.

Accordingly, Jolen respectfully asks that the Court order such other appropriate service, as detailed below, in this case prior to the Initial Pretrial Conference, scheduled by the Court in this case for April 11, 2019. Jolen also respectfully requests that in the event that the Court requires full briefing and submission of a motion in this matter that the April 11, 2019 Initial Pretrial Conference be adjourned pending the briefing and decision of this application and the service of the Kundan Respondents.

## Background

By way of background, the Petition arises out of an arbitration between Jolen and Kundan Respondents stemming from Respondents' failure to honor their obligations under an exclusive trademark license agreement (the "Agreement").

Under the Agreement, Kundan Respondents were granted the right to sell Jolen products and commercially exploit the Jolen trademark in the country of India and other the defined non-United States territories. Kundan was then obligated, *inter alia*, to make monthly royalty payments of 2% of net sales to Jolen, limit sales to India (and other later specifically agreed upon countries as represented in certain written amendments to the Agreement), provide monthly reports on products manufactured, sales, and royalties due to Jolen.

Kundan, *inter alia*, breached the Agreement by: (1) failing to make the requisite monthly reporting to Jolen as required under the Agreement; (2) failing to make the requisite quarterly royalty payments to Jolen as required under the Agreement; (3) selling and marketing products outside of the approved territorial limits. Kundan was provided with a notice of default on or about August 3, 2015 and an opportunity to cure. Kundan failed to cure its default and the arbitration was commenced thereafter.

Pursuant to the Agreement, on or about April 4, 2016, Jolen submitted the dispute to arbitration under the auspices of the International Chamber of Commerce, International Court of Arbitration (the "Arbitration"). Under the terms of the arbitration clause of the Agreement, the venue of the arbitration was New York, NY, USA.

Initially, Kundan Respondents contested the venue of the arbitration in New York and based upon a purported venue amendment sought to strip the arbitrator of his jurisdiction both in the arbitration and in a separate suit in India. Jolen was forced to engage a forensic document examiner as an expert witness. After Jolen's expert opined that the purported venue amendment was a fabrication, Kundan Respondents, without contesting the expert's finding, withdrew their objection to the arbitrator's jurisdiction and withdrew, with prejudice, their suit in India.

The arbitrator, on the consent of the parties, bifurcated the arbitration proceedings with phase one to resolve liability issues (the "Liability Phase") and phase two to address damages

Case 1:19-cv-01296-PKC Document 8 Filed 02/19/19 Page 3 of 6

**Anderson Kill P.C.**

The Honorable P. Kevin Castel
February 19, 2019
Page 3

(the "Damages Phase"). In September 2017, two days of hearings on the Liability Phase issues were held in New York at the offices of Gibson Dunn with full participation from the Kundan Respondents by US and Indian counsel in person, with corporate representatives appearing by video link from India.

On July 13, 2018, following post-hearing briefing, the arbitrator rendered a Partial Final Award on the Liability Phase (the "Award"). The arbitrator determined that, among other things, Kundan materially breached the Agreement by failing to make royalty payments and failing to provide monthly sales reports. It was also determined that the Agreement terminated on August 3, 2015 based upon Kundan's failure to cure those breaches after notice to cure.

An order issued by the Arbitrator on January 15, 2019 ordered that "[t]o the extent that Respondents are continuing to manufacture, sell or advertise Jolen trademarked products, they are ordered to cease the manufacture, sale, and advertising of Jolen trademarked products in light of the [Award] dated July 13, 2018."

Despite the issuance of the Award and the ruling that the Agreement terminated in August 2015, Kundan Respondents admitted that they presently to continue to use the Jolen trademark.

On or about September 19, 2018, Kundan Respondents apparently initiated *ex parte* proceedings in India in an effort to obtain an interim stay of execution of the Award although Jolen has never been served with papers in that proceeding.

On February 5, 2019, Kundan Respondent's counsel informed Jolen and the arbitrator of the commencement of the Indian proceedings, for the first time, and confirmed that Kundan "continues to manufacture, sell and advertise Jolen products." There is no stay of the partial award in place and Kundan Respondents' actions are in willful violation of the partial award and the arbitrator's orders in relation thereto.

On February 11, 2019, Jolen filed the instant petition to obtain confirmation of the Award.

On February 19, 2019, counsel for Jolen asked Kundan's New York arbitration counsel, Lennon Murphy & Phillips LLP (the "Lennon Firm"), whether they would accept service of the Petition. The Lennon Firm has advised that they are not authorized to accept service.

<u>The Request for Alternative Service</u>

Without the alternative service requested herein, Jolen's only option will be to attempt to effect service on Kundan in India through the Hague Convention. The only method of service acceded to by India under the Hague Convention involves sending the service documents to the Central Authority in India and having that Central Authority affect service pursuant to Article 10 of the Hague Convention. No additional or alternative methods of service in India are permissible under the Hague Convention.

**Anderson Kill P.C.**

The Honorable P. Kevin Castel
February 19, 2019
Page 4

      This makes service in India through the Hague Convention a time-consuming, expensive, and challenging endeavor that is by no means guaranteed to be successful. Jolen has contacted an experienced international legal support and service company and has been informed that Hague Convention service in India will take 12 months or longer.[1] Indeed, courts in the Southern District and elsewhere have recognized that service in India is particularly difficult. To wit:

- *FTC v. Pecon Software Ltd.*, 12 Civ. 7186, 2013 U.S. Dist. LEXIS 111375 (S.D.N.Y. August 7, 2013) (granting leave to serve certain Indian defendants by email where such service comported with due process) – Describing the efforts to serve defendants via the Indian Central Authority as "fruitless." *Id.* at **25-26. "As noted, on November 19, 2012, the Central Authority returned the full box of documents to the FTC, stating that the addresses were not valid. After the FTC belatedly discovered, on April 26, 2013, that the boxes had been returned, the FTC made numerous attempts to contact the Central Authority and obtain clarifications as to the deficiencies in the FTC's submission. On those occasions that the FTC was able to reach someone at the Central Authority, no answers were forthcoming, and subsequent emails and phone calls have been ignored." *Id.* at *26. The Central Authority "to date has not shown a disposition to act – or even to respond to the FTC's queries." *Id.*

- *FTC v. PCCare247 Inc.*, No. 12 Civ. 7189, 2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. March 7, 2013) (granting leave to serve Indian defendants by email and Facebook) - "Despite having submitted these documents to the Indian Central Authority on September 27, 2012 – more than five months ago – the FTC has received no indication that defendants have been served. Nor has the Indian Central Authority responded to the FTC's inquiries." *Id.* at **18-19.

- *Gurung v. Malhotra*, 279 F.R.D. 215, 217 (S.D.N.Y. November 22, 2011) (referencing earlier order granting leave to serve Indian defendants by publication in two Indian newspapers, certified mail, and email) – "[Plaintiff] had demonstrated the futility of service of process through the Central Authority in New Delhi, India." *Id.* at 217.

- *Webroot Inc. v. Singh*, Civil Action No. 18-cv-01909-STV, 2018 U.S. Dist. LEXIS 170900 (D. Colo. October 3, 2018) – "Despite sending numerous emails, making several phone calls, and attempting to send a letter requesting more information via fax, Plaintiff has been unable to ascertain the status of service of Defendants through the Central Authority." *Id.* at *2.

---

[1] Jolen is prepared to submit an affidavit from the service firm attesting to the specifics of Indian service and to the time frames involved.

**Anderson Kill P.C.**

The Honorable P. Kevin Castel
February 19, 2019
Page 5

Other federal district courts have come to similar conclusions but *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, Case No.: 11-CV-02460, U.S. Dist. LEXIS 71269 (N.D. Cal. July 1, 2011) is particularly instructive. There, the plaintiff moved for leave to serve the Indian defendants by serving process on their U.S. counsel. The court noted plaintiff's contention that the Hague process can take six to eight months to complete and that plaintiff faced immediate, irreparable harm if it cannot obtain relief in through the action. Per the court, "Plaintiff has presented issues that require resolution with greater urgency than the Hague Convention process can accommodate, and alternative service under Rule 4(f)(3) is warranted." *Id.* at *44.

Given Kundan's flagrant and ongoing breach of the Agreement and refusal to abide by the the Award, Jolen seeks the ability to quickly and properly serve Kundan so that Jolen can obtain confirmation of the Award which would permit it to bring enforcement proceedings in India to stop Kundan from continuing to use its mark and sell products, falsely, in its name.

### Governing Law

As articulated by Your Honor in *In re BRF S.A. Securities Litigation*:

> Rule 4(f) governs service of process on individuals located in a foreign country. Rule 4(f)(1) permits service through "any internationally agreed means of service that is reasonable calculated to give notice," such as the Hague Convention. Rule 4(f)(2) permits services through other specified means such as letters rogatory or the procedures prescribed by the foreign country's court of general jurisdiction. Rule 4(f)(3) permits service "by other means not prohibited by international agreement, as the court orders."

18-cv-2213 (PKC), 2019 U.S. Dist. LEXIS 9018, at **5-6 (S.D.N.Y. Jan. 18, 2019).

As this Court has also recognized, there is no hierarchy among the methods for service set forth in Rule 4(f) of the Federal Rules of Civil Procedure and court-ordered alternative means of service are just as valid a means of service as service under the Hague Convention. Id. at **6-7. Indeed, courts have regularly held that court-ordered alternative methods can be used as a first resort by litigants without requiring them to attempt Hague Convention Service. *See e.g., Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 377-78 (S.D.N.Y. 2018); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("[N]othing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3).").

Ordering alternative means of service pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure is within the sound discretion of this Court and such means are properly authorized where they are not prohibited by international agreement and they comport with constitutional notions of due process in that the method of service chosen is reasonably calculated to provide the foreign party with notice of the pending action and affords them an

Case 1:19-cv-01296-PKC Document 8 Filed 02/19/19 Page 6 of 6

**Anderson Kill P.C.**

The Honorable P. Kevin Castel
February 19, 2019
Page 6

opportunity to present their objections. *See In re BRF*, 2019 U.S. Dist. LEXIS 9018, at **6-7; *Elsevier*, 287 F. Supp. 3d at 378; *In re GLG*, 287 F.R.D. at 267. Herein, Jolen requests that the Court order alterative service pursuant to Rule 4(f)(3) *via* email upon Kundan Respondents' U.S. counsel, the Lennon firm. The Lennon Firm has offices in this district and members of the Lennon Firm representing the Kundan Respondents are admitted to practice before this Court. The Lennon Firm continues to represent the Kundan Respondents in the ongoing Damage Phase of the arbitration and have filed letters on behalf of the Kundan Respondents in the arbitration as recently as this month indicating that they are in recent contact with the Kundan Respondents.[2] The Lennon Firm regularly accepts service of papers in the arbitration by email and so are accustomed to that procedure. Both service by email and service upon counsel have been held not be prohibited by the Hague Convention and to comport with notions of due process. *See Elsevier*, 287 F. Supp. 3d at 378-379 and fn. 2 (Finding that alternative service *via* email on Chinese defendants is not prohibited under the Hague Convention and comports with due process requirements); *In re GLG*, 287 F.R.D. at 267 (Finding that alternative service on unserved party's counsel, who was in recent contact with unserved foreign party, is not prohibited under the Hague Convention and comports with due process requirements); *see also Marlabs Inc. v. Jakher*, 2010 U.S. Dist. LEXIS 39557, at **6-7 (D.N.J. April 22, 2010) (Finding that alternative service *via* on Indian defendants' U.S. counsel is appropriate under Rule 4(f)(3)).

Given the time sensitive nature of the issues surrounding confirmation of the partial award, the length process involved in serving through the Central Authority in India and availability of appropriate alternative methods of service, we believe that it is appropriate for this Court to order alternative service pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure on Kundan Respondents' counsel *via* email. Accordingly, Jolen respectfully requests a pre-motion conference to discuss the necessity of a motion to this effect and directive from the Court relating thereto. We thank the Court for its attention to this matter.

Respectfully submitted,

Jeremy E. Deutsch

---

[2] To the extent that the Court believes it to be necessary, Jolen would propose an additional service be authorized by email upon Kundan Respondents Indian counsel Prithu Garg. Mr. Garg appeared with the Lennon Firm for Kundan Respondents at the Hearing in the Liability Phase and is the attorney of record for the Kundan Respondents in their ex parte, unserved Indian lawsuit, and is believed to have appeared for them in Court in India as recently as February 12, 2019, and can be understood to be in recent contact with the Kundan Respondents as well.