UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN THE MATTER OF THE ARBITRATION BETWEEN

JOLEN, INC.

                    Petitioner,

and

KUNDAN RICE MILLS, LTD. AND
KUNDAN CARE PRODUCTS, LTD.

                    Respondents.

Case No. 1:19-cv-01296-PKC

---

# MEMORANDUM OF LAW IN SUPPORT OF PETITIONER JOLEN, INC.'S MOTION FOR AN ANTI-SUIT INJUNCTION

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 3

    The Agreement ................................................................................................................ 3

    Respondents Breach the Agreement ................................................................................ 4

    The Arbitration Commences ............................................................................................ 4

    Respondents Initiate the Indian Injunction Action .......................................................... 5

    Respondents Initiate the Indian Vacatur Action .............................................................. 6

ARGUMENT .......................................................................................................................... 7

I.    RESPONDENTS SHOULD BE ENJOINED FROM PROCEEDING WITH LITIGATION IN INDIA .......................................................................................... 7

    A.    The Threshold Requirements Are Met in this Action ......................................... 8

    B.    Policy Considerations Weigh in Favor of Enjoining Respondents From Pursuing Litigation in India. ............................................................................... 8

        1.    The Indian Vacatur Action Frustrates the Public Policy of the United States. ...................................................................................................... 9

        2.    The Indian Vacatur Action is Vexatious. .................................................. 10

        3.    The Indian Vacatur Proceeding Threatens this Court's Jurisdiction. ........ 10

        4.    Comity Considerations Do Not Require the Court to Defer to the Indian Vacatur Action. ........................................................................................ 11

        5.    The Indian Vacatur Action Will Cause Delay, Inconvenience, Expense and an Unseemly Race to Judgment, and a Risk of Inconsistent Judgments. ................................................................................................ 12

II.    THIS COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER ENJOINING RESPONDENTS FROM PROCEEDING WITH THE INDIAN VACATUR ACTION .......................................................................................... 12

CONCLUSION ..................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaprop Ltd. v. Indiabulls Fin. Servs., Ltd.*,
   No. 10 Civ. 1853 (PGG), 2010 U.S. Dist. LEXIS 27117 (S.D.N.Y. Mar. 23,
   2010) ...................................................................................................................7, 8, 9

*Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi
   Negara*,
   335 F.3d 357 (5th Cir. 2003) ..........................................................................................11

*Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi
   Negara*,
   500 F.3d 111 (2d Cir. 2007)..................................................................................... *passim*

*Lee Myles Auto Grp., LLC v. Fiorillo*,
   No. 10 Civ. 6267 (PKC), 2010 U.S. Dist. LEXIS 91582 (S.D.N.Y. Aug. 25,
   2010) ..............................................................................................................................12

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004)..........................................................................................7, 9

*Storm LLC v. Telenor Mobile Commc'ns AS*,
   No. 06 Civ. 13157 (GEL), 2006 U.S. Dist. LEXIS 90978 (S.D.N.Y. Dec. 15,
   2006) ................................................................................................................................7

*Telenor Mobile Commc'ns AS v. Storm LLC*,
   524 F. Supp. 2d 332 (S.D.N.Y. 2007), *aff'd*, 351 F. App'x (2d Cir. 2009)...................9, 10

*Yusuf Ahmed Alganim & Sons, W.L.L. v. Toys "R" Us, Inc.*,
   126 F.3d 15 (2d Cir. 1997)..................................................................................9, 10, 11

**Other Authorities**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
   *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New
   York Convention"), *implemented at* 9 U.S.C. §§ 201-208 ...................................... *passim*

Petitioner Jolen, Inc. ("Jolen") respectfully submits this memorandum of law in support of its motion for an injunction preventing Respondents Kundan Rice Mills, Ltd. and Kundan Care Products, Ltd. (collectively, "Respondents") from proceeding with the litigation in India (the "Indian Vacatur Action") which seeks to attack the Partial Final Award rendered in New York on July 13, 2018 under the auspices of the International Chamber of Commerce, International Court of Arbitration ("ICC") (the "Award"), or the proceedings before this Court confirming the Award (the "Confirmation Litigation").

## INTRODUCTION

This matter arises out of Respondents' breach of an exclusive trademark agreement (the "Agreement"). As determined in the Award, Respondents materially breached the Agreement by failing to make royalty payments and failing to provide monthly sales reports. It was also determined that the Agreement terminated on August 3, 2015 based upon Respondents' failure to cure those breaches after notice to cure.

On February 5, 2019, Respondents' arbitration counsel disclosed that, despite the issuance of the Award and the ruling that the Agreement terminated in August 2015, Respondents continue to use the Jolen trademark. Given Respondents' violations of the Agreement and the Award, Jolen initiated the Confirmation Litigation.

At the same time, it became apparent that Respondents had initiated an *ex parte* action in India, the Indian Vacatur Proceedings, to vacate the Award. Although Jolen has never been served in that action, Respondents were ordered by the arbitrator to share a copy of the papers with Jolen. Based upon a review of the papers, it is clear that Respondents are attempting to set aside the award on the basis of a statute of limitations objection that was addressed in the arbitration.

More disconcerting, however, is that this is not Respondents' first attempt at thwarting the arbitration through Indian litigation. Rather, shortly after raising an objection to

docs-100102603.3

the ICC's jurisdiction, Respondent Kundan Care Products, Ltd., ("Kundan Care") initiated *ex parte* proceedings in India seeking declaratory and injunctive relief (the "Indian Injunction Action") rejecting any liability. After two years, participation in the arbitration by Respondents, considerable legal fees and costs incurred in litigating the Indian Injunction Action, and no decision on the issues raised, Kundan Care withdrew the action.

Simply put, Respondents have done what they could to thwart this action at every turn. Everything, of course, except raising the issues before this Court – the Court of proper jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention"), *implemented at 9 U.S.C. §§ 201-208*. Indeed, under the New York Convention, the court of the seat of arbitration has jurisdiction over issues of confirmation (e.g., primary jurisdiction) while questions of enforcement can be raised in countries where enforcement is sought (e.g., secondary jurisdiction).

Under well-settled case law, Respondents' actions constitute grounds for an anti-suit injunction. In line with the threshold requirements, the same parties are present in both actions and resolution of the matter before this Court is dispositive. Beyond these threshold requirements, the factors in determining whether the Respondents should be enjoined - (1) frustration of a policy in the enjoining forum; (2) whether the foreign action would be vexatious; (3) whether the foreign proceedings present a threat to the enjoining court's *in rem* or *quasi in rem* jurisdiction; (4) whether the proceedings in the other forum prejudice other equitable considerations; or (5) whether adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment – all weigh in favor of an anti-suit injunction.

Similarly, there are ample grounds for a preliminary injunction. Jolen is likely to succeed on the merits and Jolen faces a threat of immediate and irreparable harm if Respondents

are not enjoined. Absent injunctive relief, the Indian Vacatur Action will continue and may result in orders that impair Jolen's rights under the Award, the New York Convention, and the Agreement.

As set forth below, this Court should exercise its equitable jurisdiction to halt Respondents' continuing efforts to use the Indian courts to frustrate Jolen's rights.

## FACTUAL BACKGROUND

### *The Agreement*

On or about November 1, 2004, Jolen and the First Respondent entered into the Agreement. A true copy of the Agreement is attached to the Declaration of Jeremy E. Deutsch, dated March 19, 2019 ("Deutsch Decl."), as Exhibit 1.

Pursuant to the Agreement, Respondents were granted the exclusive right to sell Jolen products and commercially exploit the Jolen trademark in the defined territory. Agreement at § 3.1. Respondents were then obligated, *inter alia*, to make monthly royalty payments of 2% of net sales to Jolen, limit sales to India (and other later specifically agreed upon countries as represented in certain written amendments to the Agreement), provide monthly reports on products manufactured, sales, and royalties due to Jolen. Agreement at § 3.4 and § 3.7. *See* Deutsch Decl. ¶11

The Agreement required that upon termination, "all rights granted to the licensee pursuant to this agreement shall cease and the licensee shall forthwith cease to use the trademark JOLEN or any mark similar thereto for any goods or services and/or as part of corporate name, business name, [or] trade styling." Agreement at § 9.1.

The Agreement further provided that "[t]he Licensee shall acquire no right of any kind in the said Trade Mark [sic.] Jolen or in the goodwill thereto." Agreement at § 5.8.

Section 12.1 of the Agreement (the "Arbitration Agreement") provides that: "Any controversy or claim arising out of or relating to this agreement or any breach or alleged breach

thereof shall be finally settled by arbitration in accordance with the rules and conciliations of arbitration of the International Chamber of Commerce, Paris, France. The venue of arbitration shall be at New York, NY, USA. The arbitration award shall be final and binding upon the parties." *See* Deutsch Decl. ¶12.

### Respondents Breach the Agreement

Respondents, *inter alia*, breached the Agreement by: (1) failing to make the requisite monthly reporting to Jolen as required under the Agreement; (2) failing to make the requisite quarterly royalty payments to Jolen as required under the Agreement; (3) selling and marketing products outside of the approved territorial limits. *See* Deutsch Decl. ¶13.

Respondents were provided with a notice of default on or about August 3, 2015, but Respondents failed to cure their default. *See* Deutsch Decl. ¶14.

### The Arbitration Commences

On or about April 4, 2016, Jolen filed its Request for Arbitration with the ICC. *See* Deutsch Decl. ¶15. On May 11, 2016, Respondents filed their Answer objecting to jurisdiction on the basis of an alleged (and fabricated) amendment to the Agreement. *See* Deutsch Decl. ¶16. They claimed that the Request for Arbitration was "null, void, non est and not binding" on them pursuant to this alleged amendment. *See* Deutsch Decl. ¶16.

On May 13, 2016, the ICC advised the parties in writing that it was declining to rule on the requests made by Respondents on May 11, 2016 and that any question of jurisdiction would be determined by the tribunal. *See* Deutsch Decl. ¶17.

On June 2, 2016, the ICC appointed a sole arbitrator to hear the dispute. *See* Deutsch Decl. ¶18. The arbitrator bifurcated the proceedings with phase one to resolve liability issues and phase two to address damages. *See, e.g.*, September 7, 2017 Hearing Tr. at 417:8-10 (ECF No. 4-2, Filed February 11, 2019); July 13, 2018 Partial Final Award, at Section VII. A true copy of the Award is attached to the Deutsch Decl. as Exhibit 2. The arbitration proceeded

and a final hearing was held at the New York office of Gibson Dunn on September 6 and 7, 2017. *See* Deutsch Decl. ¶20. Post-hearing submissions were filed in October and November 2017. *See* Deutsch Decl. ¶21.

On July 13, 2018, the Arbitrator issued the Award in which it was determined that, among other things, Respondents materially breached the Agreement by failing to make royalty payments and failing to provide monthly sales reports. Award, ¶ 119.c. It was also determined that the Agreement terminated on August 3, 2015 based upon Respondents' failure to cure those breaches after notice to cure. Award, ¶ 119.d.

On January 15, 2019, the Arbitrator directed that "[t]o the extent that Respondents are continuing to manufacture, sell or advertise Jolen trademarked products, they are ordered to cease the manufacture, sale, and advertising of Jolen trademarked products in light of the Partial Award dated July 13, 2018." Procedural Order No. 7, dated January 15, 2019, at ¶22. A true copy of Procedural Order No. 7 is attached to the Deutsch Decl. as Exhibit 3.

Despite the issuance of the Award and the ruling that the Agreement terminated in August 2015, Respondents have admitted that they continue to use the Jolen trademark. *See* February 5, 2019 Email from Kevin Lennon, Esq. to Arbitrator Rahim Moloo, Esq. A true copy of the February 5, 2019 Email is attached to the Deutsch Decl. as Exhibit 4.

### Respondents Initiate the Indian Injunction Action

On or about May 2016, following submission of jurisdictional objections in the arbitration, Second Respondent initiated ex parte proceedings in India to obtain the following: (1) a declaration that Respondents have not breached the terms of the Agreement; (2) a declaration that the arbitration commenced by Jolen is "null, void, non est and not binding" upon the Respondents; (3) an injunction perpetually enjoining Jolen from proceeding with this arbitration; and (4) an injunction requiring Jolen to withdraw the request for arbitration this

matter. Deutsch Decl. ¶27. A true copy of the papers initiating the Indian Injunction Action is attached to the Deutsch Decl. as Exhibit 5.

On or about July 28, 2016, in the same action, Jolen submitted an application under Section 45 of the (Indian) Arbitration and Conciliation Act 1996, for referring the parties to the Indian Injunction Action to arbitration which was already commenced in accordance with the ICC Rules. *See* Deutsch Decl. ¶28. A true copy of Jolen's application is attached to the Deutsch Decl. as Exhibit 6. The basis for the opposition is that the later-in-time complaints in the Indian Injunction Action were infirm and incapable of vesting the Indian court with jurisdiction over the earlier-filed Request for Arbitration. *See* Deutsch Decl. ¶28.

No decision was issued in the Indian Injunction Action. *See* Deutsch Decl. ¶29. Rather, on August 23, 2018, the Indian Injunction Action was withdrawn. Deutsch Decl. ¶30. A true copy of the withdrawal is attached to the Deutsch Decl. as Exhibit 7.

### *Respondents Initiate the Indian Vacatur Action*

On or about September 19, 2018, Respondents initiated the Indian Vacatur Action, *ex parte* proceedings in India in an effort to obtain an interim stay of the Award. Deutsch Decl. ¶31. A true copy of the papers initiating the Indian Vacatur Action (the "Indian Vacatur Action Papers") is attached to the Deutsch Decl. as Exhibit 8. As set forth in the Memorandum of the Parties, the Petitioners in the Indian Vacatur Action are Kundan Rice Mills, Ltd. and Kundan Care Products, Ltd., while the sole Respondent is Jolen, Inc. Indian Vacatur Action Papers, Deutsch Decl., Exhibit 8, at marked page 7. Despite this, Jolen has never been served with papers in that proceeding. *See* Deutsch Decl. ¶32.

The Indian Vacatur Action is an "application, under Section 36(3) of the Arbitration and Conciliation Act, 1996, for staying operation of the impugned partial award dated July 13, 2018 passed by the International Chamber of Commerce, International Court of

Arbitration in ICC case no. 21848/FD/MK." Indian Vacatur Action Papers, Deutsch Decl., Exhibit 8, at marked pages 4-5.

In fact, it was not until February 5, 2019 that Respondents' counsel, for the first time, informed Jolen and the Arbitrator of the commencement of the Indian Vacatur Action. *See* February 5, 2019 Email attached to the Deutsch Decl. as Exhibit 4. On February 8, 2019, after being ordered to do so by the Arbitrator, Respondents' counsel provided Jolen with a copy of the papers filed in the Indian Vacatur Action. *See* Deutsch Decl. ¶¶33-34.

Jolen has been informed that the hearing in the Indian Vacatur Action has been scheduled for April 22, 2019. *See* Deutsch Decl. ¶ 35.

## ARGUMENT

### I. RESPONDENTS SHOULD BE ENJOINED FROM PROCEEDING WITH LITIGATION IN INDIA

The power of federal courts to enjoin foreign litigation in favor of arbitration is well-established. *See, e.g., Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004) ("*Paramedics*"); *Amaprop Ltd. v. Indiabulls Fin. Servs., Ltd.*, No. 10 Civ. 1853 (PGG), 2010 U.S. Dist. LEXIS 27117, at *14 (S.D.N.Y. Mar. 23, 2010) ("*Amaprop*"); *Storm LLC v. Telenor Mobile Commc'ns AS*, No. 06 Civ. 13157 (GEL), 2006 U.S. Dist. LEXIS 90978, at *12 (S.D.N.Y. Dec. 15, 2006).

An anti-suit injunction may be granted where: (1) the parties are the same in both matters and; (2) resolution of the case before the enjoining court is dispositive of the action to be enjoined. *Paramedics*, 369 F.3d at 652. Where these threshold requirements are met, the Court must consider five factors in determining whether the action should be enjoined: (1) frustration of a policy in the enjoining forum; (2) whether the foreign action would be vexatious; (3) whether the foreign proceedings present a threat to the enjoining court's *in rem* or *quasi in rem* jurisdiction; (4) whether the proceedings in the other forum prejudice other equitable

considerations; or (5) whether adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment. *See Amaprop*, 2010 U.S. Dist. LEXIS 27117, at *17 (collecting cases).

    A.    **The Threshold Requirements Are Met in this Action.**

Here, the first requirement is met, the parties in this action are the same parties named in the Indian Vacatur Action.

The second requirement for an anti-suit injunction also is met here. This proceeding and the Indian Vacatur Action seek diametrically opposed relief. In this action, Jolen seeks confirmation of the Award. In the Indian Vacatur Action, Respondents seek to vacate the Award.[1] Given these conflicting actions, resolution of the case before this Court is dispositive of the action to be enjoined.

    B.    **Policy Considerations Weigh in Favor of Enjoining Respondents From Pursuing Litigation in India.**

In addition to the threshold requirements for an anti-suit injunction, policy considerations strongly favor adjudicating the Award in New York. The policy factors bearing on whether the Court should issue an injunction include:

> (1) frustration of a policy in the enjoining forum; (2) whether the foreign action would be vexatious; (3) whether the foreign proceedings present a threat to the enjoining court's in rem or quasi in rem jurisdiction; (4) whether the proceedings in the other forums prejudice other equitable considerations; or (5) whether adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

*See Amaprop*, 2010 U.S. Dist. LEXIS 27117 at *17 (collecting cases).

As a matter of law, confirmation and set aside proceedings are appropriate in the courts of the seat of arbitration not in a foreign situs. *See Karaha Bodas Co., LLC v. Perusahaan*

---

[1] As discussed in detail in the next section of the argument, only this Court, and not the Indian court, should have jurisdiction over confirmation proceedings.

*Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 115 n.1 (2d Cir. 2007); *Yusuf Ahmed Alganim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 22 (2d Cir. 1997) (collecting authority for the proposition that set aside is only possible under the domestic law of the arbitral forum); *Telenor Mobile Commc'ns AS v. Storm LLC*, 524 F. Supp. 2d 332, 343 n.8 (S.D.N.Y. 2007), *aff'd*, 351 F. App'x (2d Cir. 2009) ("[T]he only court with authority to vacate an international arbitration award is one at the seat of arbitration, and therefore, only this Court has jurisdiction to determine whether the Award should be set aside."). (internal citations omitted). In *Karaha Bodas*, the Second Circuit explained that the New York Convention assigns:

> In contrast to the limited authority of secondary-jurisdiction courts to review the arbitral award, courts of primary jurisdiction, usually the courts of the country of the arbitral situs, have much broader discretion to set aside an award. By its silence on the matter, the Convention does not restrict the grounds on which primary-jurisdiction courts may annul an award, thereby leaving to a primary jurisdiction's local law the decision whether to set aside an award. Consequently, even though courts of a primary jurisdiction may apply their own domestic law when evaluating an attempt to annul or set aside an arbitral award, courts in countries of secondary jurisdiction may refuse enforcement only on the limited grounds specified in Article V.

500 F.3d at 115 n.1 (internal citations omitted). As such, the Indian court lacks jurisdiction to address confirmation or the setting aside of the award. To the extent there are enforcement proceedings in India, the Indian courts will have jurisdiction under the New York Convention to address that issue on the grounds provided under the New York Convention.

### 1. The Indian Vacatur Action Frustrates the Public Policy of the United States.

The Indian Vacatur Action interferes with strong public policies of the United States. "It is this nation's policy to strongly favor enforcement of arbitration agreements." *Amaprop*, 2010 U.S. Dist. LEXIS 27117, at *18. This policy "applies with particular force in international disputes." *Paramedics*, 369 F.3d at 654.

The Indian Vacatur Action is based on arguments that Respondents made in the arbitration itself regarding whether Indian law bars Jolen's claim based on the applicable statute of limitations. *Compare* Deutsch Decl., Exhibit 8, with Deutsch Decl., Exhibit 2, at 34. Respondents now seek to re-litigate the dispute in India and set aside the award. This violation of public policy is all the more egregious because this is the second time Respondents have brought an action in India to frustrate the arbitration, and Respondents have never brought an action in this Court, the appropriate Court for any action to contest the Award.

### 2. The Indian Vacatur Action is Vexatious.

Respondents have proceeded in the utmost bad faith. After signing an agreement in which the parties promised that "any controversy or claim arising out of or relating to" the Agreement would be resolved through arbitration, and after disputes indisputably covered by the Arbitration Agreement arose, Jolen pursued its arbitration remedy. Respondents, by contrast, created false evidence, and commenced *ex parte* actions in Indian courts with the aim of thwarting the arbitration and now the Award.

In addition, Respondents have so far failed to participate in the proceedings in this Court which, under the New York Convention, is the court of primary jurisdiction and the only court able to set aside the Award. *See Karaha Bodas,* 500 F.3d at 115 n.1; *Yusuf Ahmed*, 126 F.3d at 22; *Telenor*, 524 F. Supp. 2d at 343 n.8. If Respondents had good faith arguments against confirmation of the Award, they should have appeared and advanced those arguments here. Instead, they filed the Indian Vacatur Action.

### 3. The Indian Vacatur Proceeding Threatens this Court's Jurisdiction.

Where foreign litigation poses a threat to the enjoining court's jurisdiction, courts issue anti-suit injunctions to protect their own jurisdiction. *Karaha Bodas*, 500 F.3d at 126.

The Indian Vacatur Proceeding seeks to interfere with this Court's primary jurisdiction under the New York Convention to hear and determine the confirmation proceedings

of an arbitral award that was validly rendered in New York. Both the United States and India are signatories to the New York Convention, which creates two different regimes for the review of arbitral awards: primary jurisdiction is given to the jurisdiction in which, or under the law of which, the award was made, and secondary jurisdiction is given to all other states where recognition and enforcement are sought. *See Yusuf Ahmed*, 126 F.3d at 23; *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003). A court with primary jurisdiction may review an award under the law of the rendering state, and is "free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." *Yusuf Ahmed*, 126 F.3d at 23. In contrast, in secondary jurisdictions "parties can only contest whether that State should enforce the arbitral award," *Karaha Bodas*, 335 F.3d at 364, and may refuse to enforce an award within their respective states "only on the grounds explicitly set forth in Article V of the Convention." *Yusuf Ahmed*, 126 F.3d at 23.

The arbitration was conducted in New York and this Court accordingly has primary jurisdiction. Indian courts are, therefore, limited to secondary jurisdiction and cannot prohibit this Court, which has primary jurisdiction, from confirming the Award.

4. **Comity Considerations Do Not Require the Court to Defer to the Indian Vacatur Action.**

Ordinarily, issues of comity should be considered in deciding whether to issue an anti-suit injunction. As the Second Circuit explained in *Karaha Bodas*, "comity concerns under the Convention have no bearing on our consideration of the [foreign] proceeding, which is not a proceeding contemplated by the Convention and is, moreover, intended to undermine federal judgments." 500 F.3d at 127. Because this Court has primary jurisdiction over actions to confirm or vacate the Award, it should not grant any comity to the Indian Vacatur Action.

> 5. **The Indian Vacatur Action Will Cause Delay, Inconvenience, Expense and an Unseemly Race to Judgment, and a Risk of Inconsistent Judgments.**

The Indian Vacatur Action will cause delay, inconvenience, expense, an unseemly race to judgment, and a risk of inconsistent judgments. Litigating in India to oppose the Indian Vacatur Action will force Jolen to incur significant expenses and inconvenience fighting an improper parallel proceeding intended to set aside the award and divest this Court of jurisdiction. This can be seen in the Indian Injunction Action which required extensive briefing over a two-year period, significant costs, and no decision from the Indian court prior to the withdrawal of the action. *See* Deutsch Decl., ¶¶ 29 – 30.

## II. THIS COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER ENJOINING RESPONDENTS FROM PROCEEDING WITH THE INDIAN VACATUR ACTION

To obtain a preliminary injunction, the party seeking the injunction must establish "(1) irreparable harm and (2) either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of the hardships tipping decidedly toward the party requesting the preliminary relief." *See, e.g., Lee Myles Auto Grp., LLC v. Fiorillo*, No. 10 Civ. 6267 (PKC), 2010 U.S. Dist. LEXIS 91582, at *5 (S.D.N.Y. Aug. 25, 2010) (Castel, J.) (internal citations omitted). Jolen more than satisfies that test.

First, as shown above, Jolen is likely to succeed on the merits. Further, Jolen faces a threat of immediate and irreparable harm if Respondent are not enjoined. Absent injunctive relief, the Indian Vacatur Action will continue and may result in orders that impair Jolen's rights under the Award, the New York Convention, and the Agreement. An anti-suit injunction is the appropriate means by which to prevent such harm.

Absent a temporary restraining order, Respondents, judging by their past behavior and current litigation tactics, are likely to take further steps designed to undermine this Court's

jurisdiction and interfere with Jolen's ability to enforce the Award. Deutsch Decl., ¶37. Accordingly, a brief restraint until the parties can be heard on Jolen's motion will avoid such harm.

The application for a temporary restraining order should be heard *ex parte*, because Respondents are otherwise likely to immediately seek further and more drastic relief in India. Deutsch Decl., ¶37. Once a temporary restraining order is entered, Jolen will provide prompt notice to Respondents through counsel as was previously directed by the Court. Deutsch Decl., ¶38.

## CONCLUSION

For the foregoing reasons, Jolen's motion should be granted in its entirety.

Dated: New York, New York
       March 22, 2019

Respectfully submitted

_____
Jeremy E. Deutsch, Esq.
Christian V. Cangiano, Esq.
Peter A. Halprin, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY  10020
jdeutsch@andersonkill.com
ccangiano@andersonkill.com
phalprin@andersonkill.com
Telephone:  212-278-1000
*Attorneys for Petitioner*