UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JOLEN, INC.,

                              Petitioner,                          19-cv-1296 (PKC)

           -against-                                               OPINION
                                                                   AND ORDER

KUNDAN RICE MILLS, LTD. and KUNDAN
CARE PRODUCTS, LTD.,

                              Respondents.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

           Petitioner Jolen, Inc. ("Jolen") has brought this petition to confirm a partial

arbitration award (the "Partial Award") issued in New York, New York on July 13, 2018, arising

out of a dispute with respondents Kundan Rice Mills, Ltd. and Kundan Care Products, Ltd.

(together, "the Kundan Entities") under an exclusive trademark agreement. (Doc 1.) After the

issuance of the Partial Award but prior to the start of this action, the Kundan Entities initiated ex

parte proceedings in an Indian court seeking to vacate the Partial Award. (Declaration of Jeremy

E. Deutsch ("Deutsch Decl.") ¶31 & Ex. 8.)

           On application of Jolen, this Court entered an Order requiring the Kundan Entities

to show cause why an injunction ought not issue against them barring them from proceeding with

an action to vacate the Partial Award in the courts of India. (Doc 14.) The Kundan Entities have

not appeared in this action.  For the reasons explained below, Jolen's motion is granted and an

injunction will issue.

BACKGROUND

        Jolen and Kundan Rice Mills, Ltd. entered into an exclusive trademark license agreement that allowed the Kundan Entities to use Jolen's mark in exchange for royalties. (Deutsch Decl. ¶¶10−11; Ex. 1 ¶3.) The agreement contained an arbitration clause stating:

> [a]ny controversy or claim arising out of or relating to this agreement or any breach or alleged breach thereof shall be finally settled by arbitration in accordance with rules and conciliations of arbitration of the International Chamber of Commerce, Paris, France. The venue of arbitration shall be at New York, NY, USA. The arbitration award shall be final and binding upon the parties.

(Id. Ex. 1 ¶12.) Jolen commenced an arbitration under the rules of the International Chamber of Commerce alleging breaches of the agreement by the Kundan Entities. In accordance with the agreement, the arbitration was conducted in New York under the substantive law of India with the law of the place of arbitration (lex arbitri) as New York law. (Id. Ex. 2 ¶43.) The sole arbitrator, who was selected in accordance with the 2012 International Chamber of Commerce Rules, issued a 34-page Partial Award determining that the Kundan Entities had breached the agreement by failing to make royalty payments or provide monthly sales reports and that the underlying licensing agreement had terminated on August 3, 2015. (Id. Ex. 2 ¶119.)

        In September 2018, following the Partial Award, the Kundan Entities, both of which are incorporated in and have principal places of business in India (Doc 1 ¶¶5−6), filed suit in the Honorable High Court for the States of Punjab and Haryana at Chandigarh seeking to vacate the Partial Award. (Id. Ex. 8.) The Kundan Entities claim that the award is "arbitrary, unfair, unreasonable, patently illegal, and contrary to the terms of the Agreement, Fundamental Law of India and the Public Policy of India." (Id. Ex. 8 at 17.) Jolen filed suit in this Court to confirm the arbitration (Doc 1), and later brought this motion for an anti-suit injunction (Doc 14.)

ANTI-SUIT INJUNCTION STANDARD

An anti-suit injunction preventing a party from pursuing parallel litigation in a foreign forum "may be imposed only if: (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined." Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004). When these requirements are met, the Court must then consider

> five factors . . . (1) frustration of a policy in the enjoining forum;
> (2) [whether] the foreign action would be vexatious; (3) [whether the foreign
> proceedings present] a threat to the issuing court's in rem or quasi in rem
> jurisdiction; (4) [whether] the proceedings in the other forum prejudice other
> equitable considerations; or (5) [whether] adjudication of the same issues in
> separate actions would result in delay, inconvenience, expense,
> inconsistency, or a race to judgment.

China Trade and Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 35 (2d Cir. 1987) (quotation marks and citation omitted). This is referred to as the China Trade test.

"It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum. But principles of comity counsel that injunctions restraining foreign litigation be used sparingly and granted only with care and great restraint." Paramedics, 369 F.3d at 652 (quotation marks and citation omitted).

DISCUSSION

I.      The Threshold Requirements Are Met

The threshold requirements for an anti-suit injunction are that the parties are the same in both matters and resolution of the case before the enjoining court is likely dispositive of

the action to be enjoined.  Id.  The parties to the proceeding in the courts of India are the same

three parties as those present in the current proceeding.  (Deutsch Decl. Ex. 8 at 7.)

   A decision is "dispositive" when it "actually decide[s] the claims raised in the

[foreign] action."  Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi

Negara, 500 F.3d 111, 121 (2d Cir. 2007).  "Courts in this Circuit have found anti-suit injunctions

appropriate even when the claims in the foreign and domestic actions were not precisely identical,

but were at least based on the same underlying dispute."  AU New Haven, LLC v. YKK Corp., 15

cv 3411 (GHW)(SN), 2018 WL 2128373, at *3 (S.D.N.Y. May 8, 2018) (internal quotation marks

and citation omitted).  Both the petition before this Court and the proceeding pending in the courts

of India purport to address the validity and enforceability of the Partial Award.  (Doc 1; Deutsch

Decl. Ex. 8 at 17.)  They are based on the same underlying dispute.  SG Avipro Fin. Ltd. v.

Cameroon Airlines, 05 cv 655 (LTS)(DFE), 2005 WL 1353955, at *3 (S.D.N.Y. June 8, 2005)

("Irrespective of choice of law, the parties' dispute as to the validity of the . . . Agreement has been

placed before the courts in both the domestic and foreign forums.")

  II. The *China Trade* Factors Weigh in Favor of Injunctive Relief

    A. The New York Convention Designates the Country
      Where an Award May Be Set Aside

   There is a "strong public policy in favor of international arbitration" and in favor

of proceedings under the United Nations Convention on the Recognition and Enforcement of

Foreign Arbitral Awards (the "New York Convention"), June 10, 1958, 21 U.S.T. 2517, 330

U.N.T.S. 38.  Karaha Bodas Co., 500 F.3d at 126 (quoting Encyclopaedia Universalis S.A. v.

Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir. 2005)).  This policy seeks "to avoid

undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long

and expensive litigation."  Id.; see Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir.

2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." (quotation marks and citation omitted)).

The New York Convention governs the recognition and enforcement of the Partial Award because although the award was arbitrated in the United States, it "involves entities that are not U.S. citizens" and "has some . . . reasonable relation with" a foreign state. CBF Indústria de Gusa S/A v. AMCI Holdings, Inc., 850 F.3d 58, 73 (2d Cir. 2017) (internal quotation marks and citation omitted); see Trina Solar US, Inc. v. JRC-Servs. LLC, 229 F. Supp. 3d 176, 183 (S.D.N.Y. 2017). Both India and the United States are signatories to the New York Convention. 9 U.S.C. §§ 201–08; 368 U.N.T.S. 371 (1960).

The New York Convention designates the countries where an award may be vacated. (New York Convention Arts. V(1)(e) & VI.) Under the New York Convention, an award may only be "set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 20 (2d Cir. 1997) (quoting New York Convention Art. V(1)(e)). Here, the country "in which" the award was made is New York, New York, United States of America. (Deutsch Decl. Ex. 2 p. 34.)

The law "under which" the award is made for purposes of Article V(1)(e) is the procedural law of the arbitration. Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera, 745 F. Supp. 172, 177 (S.D.N.Y. 1990); Am. Constr. Mach. & Equip. Corp. v. Mechanised Constr. of Pakistan Ltd., 659 F. Supp. 426, 429 (S.D.N.Y. 1987), aff'd, 828 F.2d 117 (2d Cir. 1987); cf. Belize Soc. Dev. Ltd. v. Gov't of Belize, 668 F.3d 724, 731 (D.C. Cir. 2012). "[A]n agreement specifying the place of the arbitration creates a presumption that the procedural law of that place applies to the arbitration." Karaha Bodas Co. v. Perusahaan Minyak Dan Gas Bumi Negara, 364

F.3d 274, 291 (5th Cir. 2004).  The situation in which the seat of an arbitration is different than the law under which an award is made has been described as "so rare as to be a dead letter," <u>Yusuf Ahmed</u>, 126 F.3d at 21 n.3 (quotation marks omitted), "exceptional, "almost unknown," or "a once-in-a-blue-moon set of circumstances," <u>Karaha Bodas</u>, 364 F.3d at 291 (quotation marks and footnotes omitted).  Here, the Partial Award was made in accordance with the procedural law of New York, so the country "under the law of which" the Partial Award was made is the United States of America.  (Deutsch Decl. Ex. 2 ¶43.)

The United Nations Commission on International Trade Law ("UNCITRAL"), which works to promote the New York Convention, confirms this understanding.   The UNCITRAL Secretariat Guide on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958) (2016 ed.) ("Guide"), while not an official interpretation of the treaty, is intended by UNCITRAL to assist courts of signatory countries in arriving at a uniform interpretation of the New York Convention.  (Guide at x-xi.)  It notes as follows:

> Although the Convention does not provide guidance as to the meaning of the expression "under the law of which", with very few exceptions, courts have generally rejected arguments that these terms referred to the law applicable to the merits.  Courts have decided that it referred instead to the procedural law governing the arbitration, in the rare situation where the parties have selected a law to govern the arbitration that is different from the law of the place of arbitration.

Guide at 218 (Section Article V(1)(e) ¶23).

Countries that fall within Article V(1)(e) are known as states with "primary jurisdiction." <u>CBF Indústria</u>, 850 F.3d at 71.  All other states that are signatories to the New York Convention are states of secondary jurisdiction "in which parties can only contest whether that State should enforce the arbitral award," after an action for enforcement is brought within their jurisdiction. <u>Id.</u> at 70 (internal quotation marks and citation omitted).

The arbitration in this case took place in New York, New York and the procedural law applicable to the arbitration is New York law. (Deutsch Decl. Ex. 2 ¶43 and p. 34.) The rules of the arbitration conformed with the rules of the International Chamber of Commerce, Paris, France. (Id. Ex. 1 ¶12.1; Ex. 2 ¶43.) India does not have primary jurisdiction to decide a vacatur application or otherwise hear claims that the parties have agreed to arbitrate. Allowing the Kundan Entities to proceed with the Indian action would frustrate public policies encouraging arbitration and the enforcement of international arbitration law as an efficient means of settling disputes. Storm LLC v. Telenor Mobile Commc'ns AS, 06 cv 13157 (GEL), 2006 WL 3735657, at 8 (S.D.N.Y. Dec. 15, 2006) ("To the extent that the [foreign] litigation . . . threatens to disrupt the arbitration process, it would have the effect of frustrating [the federal policy favoring arbitration].").

### B.  Vexatiousness

The vexatiousness requirement is met where a suit "would require parallel actions . . . to proceed concurrently." AU New Haven, 2018 WL 2128373, at *3 (internal quotations and alterations omitted). "Proceedings are apt to be especially vexatious . . . where a foreign proceeding threatens to undermine a federal judgment." Karaha Bodas, 500 F.3d at 126. Though there has been no federal judgment in this case to date, for the reasons explained above, there is no legitimate jurisdiction over a suit seeking to vitiate the arbitration award in India. Any ruling by the Indian court will threaten to undermine the jurisdiction of this Court to confirm or enforce the Partial Award pursuant to the New York Convention and the remainder of the arbitration proceedings. The Indian suit is also vexatious because it was filed ex parte. (Deutsch Decl. ¶31; see Storm, 2006 WL 3735657, at *9 (evaluating ex parte nature of proceedings and timing of suit for vexatious behavior).) It is also the second such suit filed in India seeking an end

- 7 -

run around the parties' agreement to arbitrate disputes. In 2016, Kundan Care Products, Ltd. filed a similar ex parte anti-suit injunction action in an Indian court to enjoin the arbitration based on an alleged amendment to the agreement. (Deutsch Decl. ¶27 & Ex. 6.) This suit was withdrawn after the Partial Award issued. (Id. ¶30 & Ex. 7.) Vexatiousness weighs in favor of granting an anti-suit injunction here.

C. Threat to the Issuing Court's Jurisdiction

A threat to this Court's jurisdiction exists where "a foreign court . . is attempting to carve out exclusive jurisdiction over the action." China Trade, 837 F.2d at 37. There is no evidence that the Indian court is attempting to do so. In China Trade, the Court held that was no threat to jurisdiction where the foreign court "ha[d] not attempted to enjoin the proceedings in New York" or "sought to prevent the [S]outhern [D]istrict from exercising its jurisdiction over th[e] case." Id.; see AU New Haven, 2018 WL 2128373, at *4. However, other cases have stated that where a party brings suit in a foreign forum and "seeks the aid of a foreign proceeding in a 'blatant attempt to evade the rightful authority of the forum court,'" such acts may threaten the issuing court's jurisdiction. Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd., 441 F. Supp. 2d 552, 563 (S.D.N.Y. 2006) (quoting Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren, 361 F.3d 11, 20 (1st Cir. 2004)). There is no evidence the Indian court has attempted to interfere with the proceedings in this Court. However, for the reasons already explained, the courts of India are not a "competent authority" to "set aside or suspend[]" the Partial Award. (New York Convention Arts. V(1)(e) and VI.) The Kundan Entities' commencement of the Indian action is

- 8 -

an attempt to interfere with the Partial Award.  This factor weighs slightly in favor of an anti-suit injunction.

      D.  Equitable Considerations

      Generally, "[p]rinciples of comity weigh heavily in the decision to impose a foreign anti-suit injunction." Paramedics, 369 F.3d at 654.  The Second Circuit has stated that "comity concerns under the Convention have no bearing on our consideration of the [foreign] proceeding, which is not a proceeding contemplated by the Convention . . . ." Karaha Bodas, 500 F.3d at 127; see Motorola Credit Corp. v. Uzan, 388 F.3d 39, 60 (2d Cir. 2004) ("[O]rders of foreign courts are not entitled to comity if the litigants who procure them have deliberately courted legal impediments to the enforcement of a federal court's orders." (internal quotation marks and citation omitted)).  Comity concerns do not weigh against entry of an anti-suit injunction here.

      E.  Delay, Inconvenience, Expense, Inconsistency or a Race to Judgment

      Parallel proceedings before this Court and an Indian court creates a risk of delay, inconvenience, additional expense, and inconsistent judgments.  Already, Jolen has experienced additional inconvenience and expense in pursuing the pending anti-suit injunction.  Jolen has experienced additional expense by communicating with the arbitrator to require the Kundan Entities to provide Jolen with a copy of the papers filed in the Indian action. (Docs 14–18; Deutsch Decl. ¶¶33–34 & Ex. 4).  It will face immediate additional expense if required to continue to litigate in India and attend a hearing scheduled for April 22, 2019. (Id. ¶35.)  This factor weighs

in favor of an anti-suit injunction. Dandong v. Pinnacle Performance Ltd., 10 cv 8086 (LBS), 2011 WL 6156743, at *6 (S.D.N.Y. Dec. 12, 2011).

III.    Traditional Preliminary Injunction Factors Are Met

"Once the . . . court has addressed the propriety of imposing an anti-suit injunction under the China Trade test, the . . . court must then make findings on whether it is appropriate to enter a *preliminary* injunction here." In re Millenium Seacarriers, Inc., 458 F.3d 92, 98 (2d Cir. 2006). The standard test for issuance of a preliminary injunction is met. Jolen has demonstrated irreparable harm because "[t]he specter of inconsistent rulings . . . constitutes irreparable harm," along with the time and expense necessary to re-litigate the claims. Keep on Kicking Music, Ltd. v. Hibbert, 268 F. Supp. 3d 585, 591 (S.D.N.Y. 2017). As discussed above, there are sufficiently serious questions going to the merits of the litigation given that India is not the appropriate forum to file a vacatur action of an arbitration award. Cf. Alan Skop, Inc. v. Benjamin Moore, Inc., 909 F.2d 59, 61 (2d Cir. 1990) ("[C]onflicting stories between parties can establish a sufficiently serious question going to the merits . . . ."). And the balance of hardships tips in Jolen's favor because the parties expressly agreed to arbitrate any disputes (Deutsch Decl. Ex. 1 ¶12), and such an agreement creates awards that are recognizable and enforceable pursuant to the requirements of the New York Convention. Allowing the Kundan Entities to proceed with the Indian action would create hardship on Jolen by forcing it to litigate in multiple fora and would take time and additional expense. Jolen has satisfied the requirements for a preliminary anti-suit injunction.

Injunctive relief "should be narrowly tailored to fit specific legal violations." Patsy's Italian Rest., Inc. v. Banas, 658 F.3d 254, 272 (2d Cir. 2011); Rule 65(d), Fed. R. Civ. P. This is the second time a Kundan entity has instituted proceedings in India to stall or otherwise challenge the power of an arbitrator to issue a decision in this trademark dispute. (Deutsch Decl.

¶27.)   The first attempt lasted for two years before Kundan Care Products, Ltd. voluntarily withdrew its action. (Id. ¶30; Ex. 7.) The Kundan Entities have been found liable of breach of an agreement in the Partial Award and have been ordered to cease using Jolen's mark (id. Ex. 2 ¶119; Ex. 3 ¶22), yet there is evidence that the Kundan Entities continue to infringe on Jolen's trademark, (id. Ex. 4.) The arbitration is ongoing, and it is in the parties' interest and the purposes of arbitration to facilitate a prompt resolution of this matter without further delay or undue hardship. Therefore, the Court finds relief requiring the Kundan Entities to dismiss the currently-pending action in India and enjoining the Kundan Entities from bringing future actions attempting to invalidate or otherwise interfere with the Partial Award appropriate. Cf. Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 220 (2d Cir. 2003) ("[A] court can frame an injunction which will keep a proven infringer safely away from the perimeter of future infringement." (internal quotation marks and citation omitted)); Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd., 10 cv 1853 (PGG), 2010 WL 1050988, at *10 (granting similar relief). The injunction shall run pending further order of this Court. Ibeto Petrochem. Indus. Ltd. v. M/T Beffen, 475 F.3d 56, 65 (2d Cir. 2007); Bailey Shipping Ltd. v. Am. Bureau of Shipping, 12 cv 5959 (KPF), 2013 WL 5312540, at *18 (S.D.N.Y. Sept. 23, 2013).

CONCLUSION

For the foregoing reasons, the motion of Jolen, Inc. for an anti-suit injunction (Doc 14) against the Kundan Entities is GRANTED and its application for costs and reasonable attorney's fees on the motion is DENIED.

It is hereby ORDERED, ADJUDGED and DECREED that:

1.   Kundan Rice Mills, Ltd. and Kundan Care Products, Ltd., their officers, agents, servants, employees, attorneys, and other persons in active concert or participation with

- 11 -

any of the foregoing, shall forthwith withdraw any action pending in the Courts of India, including proceedings in the Honorable High Court for the States of Punjab and Haryana at Chandigarh (Kundan Rice Mills Ltd. and another versus Jolen Inc.), and shall refrain from instituting or participating in any proceedings the object of which, in whole or in part, is to stay, modify, vacate, set aside or render null, void, not binding or nonenforceable any portion of the Partial Award issued on or about July 13, 2018 by an arbitrator sitting in the City and State of New York, New York County, under the auspices of the International Chamber of Commerce, International Court of Arbitration.

2.  The injunction is effective immediately.  Within three business days, Jolen, Inc. shall post security in the amount of $3,000. Rule 65(c), Fed. R. Civ. P.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 9, 2019
       6:20 p.m.

- 12 -